IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Richard L. Boland, *et al.*, : | |
| : | Case No. 1:09-cv-218 |
| Plaintiffs, : | |
| : | Chief Judge Susan J. Dlott |
| v. : | |
| : | ORDER GRANTING DEFENDANTS' |
| First Winthrop Corporation, *et al.*, : | MOTION FOR SUMMARY |
| : | JUDGMENT |
| Defendants. : | |

This matter is before the Court on Defendants' Motion for Summary Judgment (doc. 12). For the reasons that follow, the Court will **GRANT** the Motion.

**I.    BACKGROUND**

On March 25, 2009, Plaintiffs Richard L. Boland and John E. Boland filed a Complaint for Accounting and to Certify Claim as a Class Action ("Complaint") (doc. 1) against Defendants First Winthrop Corporation; Winthrop Financial Co., Inc.; Woodland II Associates; Coordinated Services of Valdosta, LLC.; Linnaeus-Boston Associates; and unnamed John Does.[1]

Plaintiffs allege in the Complaint that they were solicited by (unspecified) Defendants to invest in a financial "scheme." (*Id.* at 3.) Specifically, Plaintiffs allege that "Defendants, individually or collectively[,] put out a plan whereby investors, such as a [*sic*] Plaintiffs, would invest money in a scheme where by the Plaintiffs would receive income tax losses to report on their tax return to the respective federal and state tax authority." (*Id.* at 3-4.) Plaintiffs further

---

[1] Plaintiffs failed to achieve service of process on six other putative defendants, even after an extension of time to do so by the Court, and the Court terminated the putative defendants on April 30, 2010.

1

allege that Defendants notified them on or about August 12, 2003 that real estate known as Woodland Manor II would be sold, but instead on or about December 4, 2003 "the scheme's holdings in the real estate were sold to an unknown entity." (*Id.* at 4 & Exs. 3, 4.) Plaintiffs allege that they sought information regarding "what was done" from Defendants without success. (*Id.*)

Plaintiffs plead two claims for relief. Plaintiffs' first claim is for an equitable accounting. (*Id.* at 5.) Plaintiffs allege that Defendants were "fiduciaries" and had "a duty to account to investors such as Plaintiffs." (*Id.*) Plaintiffs specifically seek in the accounting "information regarding the investment scheme and the subsequent acts by the general partners" which "includes information required by Article XII [of the Woodland Manor II: Closing Documents] to be provided including 'copies of all Federal, State and local income tax returns and informational returns . . . .'" (*Id.*)

Plaintiffs' second claim is for class action certification. The second claim merely restates the prerequisites for class certification set forth in Rule 23 of the Federal Rules of Civil Procedure. (*Id.* at 6-7.) Plaintiffs do not attempt to define a certifiable class.

In the prayer for relief, Plaintiffs seek "an order requiring the Defendants to give a complete accounting to the Plaintiffs and the members of the proposed class[,]" along with "reasonable attorney fees and costs and other relief the court deems appropriate." (*Id.* at 7.)

On June 26, 2009, Defendant filed an Answer (doc. 5) denying liability. On November 10, 2009, upon Plaintiffs' motion, the Court held a status hearing in this action. The Court ordered Plaintiffs to submit document requests to Defendants by January 15, 2010 and Defendants to respond to the requests by March 1, 2010.

Plaintiffs served twenty requests for production of documents on Defendants on January 21, 2010, six days after the Court's deadline. (Doc. 12-2.) Without seeking leave of the Court, Plaintiffs also served on Defendants twenty-seven interrogatories on January 21, 2010 and one additional interrogatory and twenty-one requests for admissions on February 23, 2010. (Docs. 12-2 & 12-3.) Defendants responded to the requests for production of documents, the interrogatories, and the requests for admissions, pursuant to an extension of time granted by the Court, in a timely manner on March 15, 2010. (Docs. 12-4, 12-5.)

Thereafter, Defendants filed the pending Motion for Summary Judgment on March 17, 2010 and the Proposed Undisputed Facts (doc. 13) supporting the Motion on March 22, 2010. The filings were served electronically upon Plaintiffs' attorney using the Court's CM/ECF system. Plaintiffs did not respond to the Motion or to the Proposed Undisputed Facts.

The Court held a second status conference with the parties on April 30, 2010. Plaintiffs' attorney asserted at the conference that he had been unaware of the pending motion and he requested time to respond. The Court ordered Plaintiffs to respond to the Motion for Summary Judgment no later than June 7, 2010. On June 3, 2010, Plaintiffs filed a two-page Memorandum Opposing Summary Judgment. Plaintiffs did not respond to the Proposed Undisputed Facts in violation of this Court's Standing Order Governing Civil Motions for Summary Judgment. Defendants filed a timely reply brief. The Motion for Summary Judgment is ripe for adjudication.

## II.  STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

The movant may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### III. ANALYSIS

#### A. Claim for Equitable Accounting

Defendants move for summary judgment on the grounds that Plaintiffs' accounting claim is moot or otherwise fails as a matter of law. "An accounting is a species of disclosure, predicated upon the legal inability of a plaintiff to determine how much, if any, money is due him from another." *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972). "A claim for an

accounting must set forth operative facts which, when construed in the plaintiff's favor, establish a right to the requested relief." *Davis v. DCB Fin. Corp.*, 259 F. Supp. 2d 664, 674 (S.D. Ohio 2003).  For example, an accounting action does not lie when the plaintiff asserts that the defendant owes money to a third party, and not to the plaintiff.  *See Phillippi v. Jim Phillippi, Inc.*, Nos. 2:07-cv-916, 2:07-cv-1001, 2009 WL 1911763, at *3 (S.D. Ohio June 26, 2009).

      Relatedly, a claim for equitable accounting is an "extraordinary remedy" and is "available only when legal remedies are inadequate." *Bradshaw*, 454 F.2d at 79.; *see also Phillippi*, 2009 WL 1911763, at *2; *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, No. 2:06-CV-00126, 2007 WL 1144866, at *4 (S.D. Ohio Apr.16, 2007); *see also Complete Building Show Co. v. Albertson*, 99 Ohio St. 11, 16, 121 N.E. 817 (1918).  Equitable accounting actions are rare since the advent of the Federal Rules of Civil Procedure because the liberal standards of the Rules generally afford plaintiffs the opportunity to obtain discovery relevant to their asserted claim.  *See Bradshaw*, 454 F.2d at 79; *Executone*, 2007 WL 1144866, at *4.  "In light of the broad discovery available to litigants, accounting actions are of dubious utility." *Digital 2000, Inc. v. Bear Commc'ns., Inc.*, 130 F. App'x 12, 23 (6th Cir. 2005).  For example, an equitable accounting claim based a fiduciary relationship will not lie where the plaintiff can pursue a legal claim for breach of fiduciary duty.  *Phillippi*, 2009 WL 1911763 at *3.

      Here, Plaintiffs in their Complaint seek only information, including tax returns, about a 2003 transaction made as part of an investment scheme in which Plaintiffs had invested.  (Doc. 1 at 5.)  Plaintiffs do not allege that Defendants breached a contractual duty or caused them

monetary damages.[2]  Plaintiffs allege that Defendants owed a fiduciary duty to them, (*id.*), but Plaintiffs have not established with evidence a breach of fiduciary duty nor that the legal remedy for such a breach would be inadequate so as to justify an equitable claim.

Plaintiffs' equitable accounting claim here is analogous to an accounting claim dismissed by the Southern District of Ohio as a matter of law in *Davis*.  The *Davis* court explained as follows:

> Plaintiff's claim for an accounting [as a shareholder of DCB on behalf of DCB] is in essence another request for an explanation of the write down.  Plaintiff alleges in his complaint that an accounting "must occur to determine the extent to which DCB's financial assets have been wrongfully depleted by the concealment of the data" concerning the write down by Larry Coburn, president of DCB, and the other directors.  Plaintiff alleges that he and other shareholders "have suffered and will continue to suffer irreparable harm from the acts of Defendants unless Defendants are forced to account for their actions."  However, plaintiff does not allege that any of the directors or any other persons improperly embezzled, appropriated or took possession of funds belonging to DCB, so as to entitle DCB to an accounting to determine what funds are due to DCB from the directors or other persons.  Plaintiff's complaint does not allege what items were included in the write down, nor does plaintiff allege that the expenditures reflected in the write down were in any way improper or involved funds which belong to DCB.  Plaintiff's complaint fails to allege facts sufficient to show that DCB or the shareholders of DCB are entitled to an accounting.

259 F. Supp. 2d at 674 (citations omitted).  Similarly, Plaintiffs here improperly use an equitable accounting claim to seek further explanation about the December 2003 transaction without first asserting Defendants' wrongdoing.  Defendants are entitled to summary judgment on the equitable accounting claim as a matter of law.

Additionally, Plaintiffs' existing claim for an accounting is now moot.  Despite Plaintiffs'

---

[2] In fact, Defendants point to evidence indicating that Plaintiffs made a greater profit from the December 2003 transaction than they would have made from the proposed sale of the Woodland Manor II property itself.  (*Compare* Doc. 1 Ex. 4 *with* Doc. 1 Ex. 3.)

dubious entitlement to relief, the Court ordered Defendants to respond to document requests propounded by Plaintiffs.  Defendants produced not only 1,300 pages of discovery, including copies of tax return documents, but Defendants went further by timely responding to twenty-eight interrogatories and twenty-one requests for admissions.  (Marsh Aff. ¶ 6; Docs. 12-4 & 12-5.)  Plaintiffs did not timely move to amend their Complaint to state a claim for damages upon receipt of the discovery in March 2010.  Therefore, Plaintiffs have obtained the "relief" which they sought in the Complaint's equitable accounting claim.

Finally, to the extent that Plaintiffs now argue that more discovery is needed, their argument is not well-taken.  The Court notes that some of the discovery Plaintiffs seek in their proposed third set of interrogatories is repetitive of discovery which Defendants have already provided.  (*Compare* Doc. 16 at #4 *with* Doc. 12-4 at 3.)  The Court will not allow Plaintiffs to conduct a "fishing expedition" in the search for a viable claim for relief.  *Riser v. WSYX-TV ABC-6*, No. 2:02-cv-091, 2002 WL 31409427, at *11 (S.D. Ohio July 17, 2002).

**B.    Claim for Class Action Certification**

Defendants also are entitled to summary judgment as a matter of law on the Plaintiffs' class action claim.  Plaintiffs did not plead any basis for relief in regards to the class allegations other than the alleged need for an accounting.  Given the failure of the equitable accounting claim, the class action claim necessarily fails as well.

### IV.     CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (doc. 12) is **GRANTED**.

IT IS SO ORDERED.

                                                        s/Susan J. Dlott
Chief Judge Susan J. Dlott
United States District Court